## PARSONS v. COOLEY.

1. **Homestead**: ABANDONMENT OF. Where a person who is not living upon the premises formerly occupied as a homestead, requests a creditor to levy an attachment upon the premises, such person will be deemed to have adandoned the right to set up any homestead claim as against the attachment.

2. ———: ———: EVIDENCE: ESTOPPEL. An admission by defendant as a witness in another action, that a homestead had not been abandoned at a certain date, does not estop him from claiming that it had been abandoned at a subsequent date, prior to the levying of the attachment under which he now claims.

*Appeal from Jones District Court.*

WEDNESDAY, DECEMBER 13.

ACTION to set aside a sheriff's deed of forty acres of land, and to quiet title thereto. Both the plaintiff and defendant claim under one Wilson Jewett. The defendant brought an action in attachment against Jewett, and levied upon the land, on the 24th day of August, 1876. In December of the same year he obtained judgment, caused the land to be sold upon execution, and purchased the same at execution sale.

At the expiration of the year he obtained a sheriff's deed, which was duly filed for record. Afterward, in 1880, Jewett claiming to be the owner of the land, notwithstanding the sheriff's sale, sold the same to the plaintiff, and executed to him a deed thereof. The plaintiff avers that his deed is valid, because, on the 24th day of August, 1876, when the defendant's writ of attachment was levied, the land constituted Jewett's homestead, and that, though it may be that he afterwards abandoned the premises as a homestead, yet the judgment did not become a lien as such, because it was obtained upon notice by publication. The defendant denies that the premises constituted Jewett's homestead at the time his writ of attachment was levied. There was a decree for the defendant. The plaintiff appeals.

*Sheean & McCarn*, for appellant.

*E. Keeler*, for appellee.

ADAMS, J.—It appears to be undisputed that Jewett left the premises in June, 1876, and never returned; that just before he left, he took his wife to the house of the defendant, who was her brother-in-law, and engaged him to board her; that, though she was in feeble health and failing gradually, she continued for a time, at least, to regard the premises as her home, and was not without hope that she should recover and return to it; that she did not, however, recover, and did not leave the defendant's house, but died there, of consumption, on the 24th day of September, of that year, it being one month after the writ of attachment was issued.

The principal question presented is as to whether Mrs. Jewett had abandoned the · premises, as a homestead, at the time of the levy of the attachment. The plaintiff, in maintaining the invalidity of the attachment, insists that she had not. In support of this position, he relies largely upon what he claims was an admission made by the defendant, in testifying upon a former action between the same parties, wherein the plaintiff was asserting the validity of a mortgage executed to him upon the same premises, upon the 4th day of August. The defendant's testimony in that case was introduced in this.

In the testimony he said: "Mrs. Jewett did not give up all hope of recovery until about a week before she died. She still thought that maybe she would recover. There was no arrangement made, and she never said anything about making a permanent residence with me. During the time, as long as she had any hopes of recovering, she always talked as if she was going to stick to the land as her homestead." This evidence, taken by itself, would tend to show that Mrs. Jewett had not abandoned her homestead at the time the attachment was levied. But it is shown by undisputed evidence that, a

few days before the levy, she had a poor spell, and became very apprehensive in regard to her recovery; that she stated to the defendant that she believed that immediately upon her death her husband would convey the property away; and requested the defendant to commence proceedings, to get his pay for keeping her, out of the property.

The attachment having been levied at her request, she must, we think, be deemed to have waived and abandoned the right to set up any homestead claim against it. Whatever her hopes or intentions might have been before or afterwards, they must be taken as subordinate to the fact of such waiver and abandonment. The plaintiff, however, contends that, as the defendant had given the testimony above set out in the former action, the plaintiff was justified in relying upon it in making his purchase, and that the defendant should now be held to be estopped from contending that Mrs. Jewett had abandoned her homestead at the time the attachment was levied.

In the former action, the question was as to whether Mrs Jewett had abandoned her homestead on the 4th day of August of the same year, twenty days before the attachment was levied. She had not at that time, as it appears, requested that such levy be made, and while it is true that the testimony given in the former action was given long after such request, yet the plaintiff cannot, we think, be heard to say that he was misled by it, for not only was the point of inquiry in the former action as to the existence of a homestead right on the 4th of August, but it is shown that the plaintiff had full knowledge, at the time of his purchase, that the defendant was insisting upon the validity of his attachment, and, consequently, upon the non-existence of the homestead right on the 24th of August. The plaintiff was not justified in allowing himself to be governed alone by the defendant's statement as contained in his testimony. He was bound to take the defendant's statements in connection with his claim. He cannot be allowed to say that he acted upon the just supposition that the de-

fendant had no right, when he knew that the defendant claimed that he had.

In our opinion the decree of the District Court must be

AFFIRMED.